IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FERGUSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br>  *Plaintiff,*<br><br>v.<br><br>TEXAS FARM BUREAU, TEXAS FARM BUREAU BUSINESS CORPORATION, TEXAS FARM BUREAU CASUALTY INSURANCE COMPANY, TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, TEXAS FARM BUREAU UNDERWRITERS, FARM BUREAU COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY,<br>  *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 6-17-CV-00111-ADA |

## ORDER ON DEFENDANTS' MOTION TO STRIKE UNTIMELY CONSENTS TO JOIN COLLECTIVE ACTION

Before the Court is Defendants Texas Farm Bureau Business Corporation, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company, Texas Farm Bureau, and Southern Farm Bureau Life Insurance Company's (collectively, the "Defendants") Motion to Strike Untimely Consents to Join Collective Action. ECF No. 204. Plaintiffs Christopher Ferguson, on behalf of himself and others similarly situated, filed a Response. ECF No. 205. Defendants filed a Reply on September 11, 2019. ECF No. 206. For the following reasons, the Motion is **GRANTED**.

1

## I. BACKGROUND

On March 20, 2018, the Court adopted the report and recommendation of Magistrate Judge Manske and granted Plaintiff's Motion for Conditional Certification. ECF No. 128. The Court also authorized Notice to a putative class consisting of "former and current independent contractors of [Defendants] who within the past three years have worked in the position of agency manager in the State of Texas." ECF No. 128. Specifically, the Order imposed a deadline of 45 days within which putative class members could opt into this action:

> Class members may opt into this collective action only if: (1) they have mailed, faxed or e-mailed their Consent Form to Plaintiff's counsel within 45 days after the Notice and Consent Forms are transmitted by Plaintiff's counsel; or (2) they show good cause for delay.

ECF No. 128. On April 13, 2018, the Notice was sent by Plaintiffs to putative class members by first class mail. Pursuant to the Court's Order, the period for class members to opt-in to the collective action closed on May 28, 2018. Furthermore, the Notice included the following language:

> **<u>Time Limits on Participating in this Lawsuit</u>**
>
> All Consents must be returned no later than May 28, 2018, which is forty-five (45) days after this Notice is mailed to you, by mail, fax, or e-mail. A consent form is enclosed with a self-addressed stamped envelope.

ECF No. 150-1 at 3. However, on July 12, 2019, Plaintiffs Thomas Posey and Lewis Richburg (collectively, the "Late Opt-In Plaintiffs") joined the case thirteen months after the deadline to opt-in to this collective action. A month later, Defendants filed the present Motion to strike the Late Opt-In Plaintiffs consents to the action.

Defendants argue the Court should strike the untimely Consents because "Plaintiffs have offered no good cause for their late-filed Consents, and these Consents violate the express terms of the Court's March 20, 2018 Order." Mot. to Strike Untimely

Consents to Join Collective Action (hereinafter, "Mot. to Strike") at 2. In response, Plaintiffs contend that courts "overwhelmingly allow individuals to participate in FLSA collective actions despite filing consents after the opt-in deadline because allowing 'late opt-ins' promotes judicial economy, conveniences the parties, and reduces litigation expenses." Resp. to Def.s' Mot. to Strike at 2. Plaintiffs also argue that Defendants are not prejudiced by the late-filed consents. *Id.*

In addition to opposing the Motion to Strike, Plaintiffs ask the Court to equitably toll the claims of the Late Opt-In Plaintiffs in the event the Court grants Defendants' motion to strike. *Id.* at 1–2. Defendants respond that such a motion is premature and not ripe for the Court. Def.s' Reply to Pls.' Resp. at 4. Defendants also argue that even if the Court considers Plaintiffs' alternative request, the Court should deny equitable tolling under "well established Firth Circuit law." *Id.*

## II. DISCUSSION

Although the Fair Labor Standards Act ("FLSA") provides for an opt-in procedure in a collective action, it does not specify when a person must opt-in or submit a written notice of consent to join a case. *See* 29 U.S.C. §§ 216(b), 255, 256. The court sets the opt-in deadline. *See id.* Courts agree that the statute should be read broadly and generously in favor of those it protects; thus, courts have discretion in matters pertaining to opt-in deadlines. *See, e.g., Coronado v. D.N.W. Houston, Inc.*, CIV.A. H-13-2179, 2014 WL 6674292, at *2 (S.D. Tex. Nov. 24, 2014) (observing the remedial purpose of the FLSA).

Courts usually balance several factors in determining whether an untimely consent to join a collective action is allowed to stand: (1) whether "good cause" exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were

3

filed; (4) judicial economy; and (5) the remedial purposes of the FLSA. *Coronado*, 2014 WL 6674292, at *2; *see also Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009). Both parties argue the factors weigh in favor of their respective positions. Ultimately, the Court agrees with the Defendant.

**(A) Plaintiffs Have Failed to Establish Good Cause for Their Late Filed Consents**

In support of their argument that the Late Opt-In Plaintiffs should be allowed, Plaintiffs provide two declarations purporting to establish good cause for the untimely consents. Resp. to Def.s' Mot. to Strike, Ex. A & Ex. B, ECF No. 205. Plaintiffs argue good cause is established with respect to Mr. Posey because he "assumed his participation was renewed" in the collective action after his original counsel withdrew. Resp. to Def.s' Mot. to Strike at 4. However, the Court finds this excuse unavailing.

Mr. Posey did *timely* opt-in to this lawsuit on April 19, 2018. ECF No. 156. He later withdrew his consent on June 5, 2018. Ex. A, Decl. of Thomas Posey, ECF No. 205. Mr. Posey claims that he withdrew after learning of prior Plaintiffs counsels' "intent to withdraw from the lawsuit." *Id.* He states that when current class counsel took over from original counsel, he assumed his participation was renewed. *Id.* However, on June 6, 2019, *after the deadline for opting in had already expired*, Mr. Posey filed a Notice of Voluntary Dismissal. ECF No. 170. Thus, Mr. Posey provides the Court with no credible explanation of how he could reasonably assume that his "participation in the lawsuit was renewed" when new counsel took over the case. Moreover, even if this mistake was reasonably credible, personal mistake does not establish good cause for filing his Consent thirteen months after the deadline. *Compare Moya v. Pilgrim's Pride Corp.*, 2016 WL 3486739, at *2 (E.D. Pa. Nov. 30, 2006) (holding the late opt-in plaintiff's mistake was insufficient to show good cause) *with Coronado*, 2014 WL 6674292, at *2 (finding

4

good cause existed because some Plaintiffs signed consents before the court-imposed deadline, but postal delays prevented counsel from receiving them until after the deadline and because some opt-in Plaintiffs did not timely receive the consent forms due to address changes).

Plaintiffs contend Mr. Richburg did not timely join the collective action because he "feared retaliation by Defendants." Ex. B, Decl. of Lewis Richburg, ECF No. 205. However, an individual's unsupported fear of retaliation is not sufficient to establish good cause. *See Moya*, 2006 WL 3486739, at *2–3 (finding that an opt-in plaintiff's fear of retaliation was not good cause); *see also Evans v. Lowe's Home Centers, Inc.*, No. 3:CV-03-438, 2005 U.S. Dist. LEXIS 45137, at *4 (M.D. Pa. Mar. 3, 2005) ("fear of retaliation [does not] excuse untimely return of opt-in notice."). Additionally, the very Notice that Mr. Richburg received informing him of his potential rights explicitly states:

> **<u>Retaliation Prohibited</u>**
>
> The FLSA prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

ECF No. 150-1 at 3. Thus, Mr. Richburg's contention that he was fearful of potential retaliation by Defendants is completely unavailing to this Court. Moreover, if Mr. Richburg had questions and concerns about retaliation, he could have contacted counsel and been reassured he was protected under the FLSA. However, Mr. Richburg was not diligent and filed his Consent thirteen months after the Court's deadline to opt-in.

Notably, Plaintiffs cannot provide any persuasive authority as to why good cause might exist with regard to the Late Opt-In Plaintiffs. Plaintiffs reference only the two declarations as support for their good cause argument. Resp. to Def.s' Mot. to Strike at 4. A careful reading of Plaintiffs' arguments reveals they simply stated why the Late Opt-In Plaintiffs filed untimely Consents. *See id.* Stating such reasons and placing these reasons under a heading stating good

cause exists for the late Consents does not make it so. Thus, the Court finds neither Mr. Posey nor Mr. Richburg establish good cause for filing their untimely consents.

**(B) A Balancing Test of the Other Factors Weighs in Favor of the Defendants**

Even if good cause does not exist, the Late Opt-In Plaintiffs' Consents are still permitted if the other *Ruggles* factors weigh in their favor. *Ruggles*, 687 F. Supp. 2d at 37; *see also Helton v. Factor 5, Inc.*, C 10-04927 SBA, 2014 WL 1725734, at *3 (N.D. Cal. Apr. 29, 2014); *Heaps v. Safelite Sols., LLC*, 2:10-CV-729, 2011 WL 6749053, at *2 (S.D. Ohio Dec. 22, 2011). Indeed, courts have broad discretion in determining whether late opt-in plaintiffs may join a collective action. *Hipp v. Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). After considering these factors, the Court does not find they weigh in favor of the Late Opt-In Plaintiffs.

1. **Prejudice to the Defendant**

Plaintiffs argue Defendants are not prejudiced by the late filers because of the relatively small percentage of plaintiffs whose consent forms were filed after the deadline (16%), there is no date set for trial, and the consents were filed before the discovery deadline. Resp. to Def.s' Mot. to Strike at 4. Conversely, Defendants contend prejudice exists because of the significant discovery requests Plaintiffs have propounded in the case to date. Reply to Pls.' Resp., ECF No. 206, at 2–3. Defendants also contend that "Defendants will unquestionably suffer prejudice if individuals are allowed to expand this action by filing Consents more than one year after the court-ordered deadline has expired," exacerbating discovery delays which could lead to further delays in trial. *Id.*

Here, the two Late Opt-In Plaintiffs represent 16% of the twelve plaintiffs in this case—a relatively small number of individuals. *See Abubakar v. Cnty. Of Solano*, No. CIV. S-06-2268 LKK/EFB, 2008 WL 550117, at *2 (E.D. Cal. Feb. 27, 2008) (holding that a 15% increase in

opt-ins was not prejudicial). Yet, the Defendants are still prejudiced in several ways. First, the Late Opt-In Plaintiffs are attempting to join this collective action after a substantial delay and without asking for leave of court to do so. Plaintiffs point to two instances where courts allowed late opt-ins despite substantial delays. Neither case is on point.

One court permitted late opt-ins despite the filers missing the deadline by about nine months. *Helton*, 2014 WL 1725734 at *2. However, the court in *Helton* determined no prejudice existed because the defendants offered only cursory arguments that they had prepared their pre-trial strategy based on the absence of any opt-in plaintiffs. *Id.* at *3. Furthermore, the defendants in *Helton* knew for almost a year that the late opt-in plaintiffs wanted to join the action and never filed a motion to strike these plaintiffs or take any action to object to these plaintiffs' addition to the action. *Id.* at *4. Indeed, the defendants even submitted a filing that included the late opt-ins as plaintiffs to the action. *Id.* Thus, the court found the defendants in *Helton* could not credibly claim unfair surprise or prejudice from the addition of the late opt-ins.

Similarly, another court found no prejudice when it allowed late opt-ins after the liability phase, but before the damages phase, of a trial. *Raper v. Iowa*, 165 F.R.D. 89, 91–92 (S.D. Iowa 1996). The Court finds this case equally inapposite. In *Raper*, the court allowed late opt-ins on the basis that the resolution of the legal issues rested upon undisputed facts. *Id.* at 92. Therefore, any unfavorable outcome would have had consequences to any separate action filed by the non-joining class members. *Id.* Additionally, the court determined the defendants had limited additional exposure because the putative class was small, and plaintiffs informed the court at hearing that most who could join the class had done so. *Id.*

Conversely, Defendants have articulated specific prejudice they will suffer if the Court allowed the Late Opt-In Plaintiffs to join the collective action. *See* Mot. to Strike at 6–7 *and*

Reply to Pls.' Resp. at 2–4. Unlike *Helton*, Defendants did not know the Late Opt-In Plaintiffs wished to join the action, nor did they acknowledge them as plaintiffs to the action. Indeed, Mr. Posey seemingly indicated to Defendants that he did *not* want to join the action by voluntarily withdrawing from the action. ECF No. 170. Additionally, Mr. Richburg showed no interest in joining the action until he contacted Plaintiffs' counsel after the deadline. Ex. B, Decl. of Lewis Richburg, ECF No. 205. Further, after Mr. Posey dismissed his claims, Defendants excluded him from their discovery requests. Ex. A, ECF No. 206. This, along with the inadvertent production of documents gathered prior to Mr. Posey's withdrawal do not constitute Defendants treating the Late Opt-In Plaintiffs in a manner that mitigates prejudice.

Similarly, Plaintiffs cannot draw sufficient parallels between this case and *Raper*. Given Plaintiffs first filed this action in 2017 and 208 filings have been made in the pre-trial stage, Plaintiffs cannot argue the resolution of issues will rest upon undisputed facts. Moreover, Defendants do not have minimal exposure like the defendants in *Raper* because many individuals who could join have not done so. Typically increased potential exposure is not a proper consideration for prejudice, but increased exposure can create prejudice if accepting the class members might cause the defendant unfair surprise. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, MDL 06-01770MHP, 2008 WL 4712769, at *2 (N.D. Cal. Oct. 23, 2008). Defendants are entitled to rely on the Court's order regarding the deadline. Allowing late opt-ins thirteen months after the set deadline would certainly exacerbate and compound the existing discovery delays in this case in a manner that will prejudice the Defendants. Thus, the prejudice factor weighs in favor of Defendants.

### 2. The Extent of the Delay

The next *Ruggles* factor is the amount of time that has passed since the deadline. *Ruggles*, 687 F. Supp. 2d at 37. The Court has found no instance where a court has held a thirteen-month delay weighed in the late opt-ins favor. The longest delay found that a court excused was the nine-month delay in *Helton*. 2014 WL 1725734 at *2. However, as the Court has already noted, the defendants' acknowledgement of the late opt-ins as plaintiffs over the course of that delay factored into the court's holding. *Id.* at *4. Most other delays lasted no longer than a few months. *See, e.g., Heaps*, 2011 WL 6749053, at *2 (allowing late filings that were "within a few months after the deadline and the majority of them within one month"); *Ruggles*, 687 F. Supp. 2d at 37 (allowing late filings that were within a month of the deadline). Here, both Late Opt-In Plaintiffs filed their Consents *thirteen months* after the deadline. However, both knew of the deadline, and Mr. Posey even gave and subsequently withdrew his Consent in this time. Consequently, given the length of the delay and the lack of good cause for it, this factor weighs in favor of Defendants as well.

### 3. Judicial Economy

Allowing the Late Opt-In Plaintiffs to join the collective action also does not promote judicial economy in this instance. Contrary to Plaintiffs' apparent assertions, judicial economy does not solely rest on whether similarly situated plaintiffs could bring separate claims. Resp. to Mot. to Strike at 7–8. Undoubtedly, courts consider this possibility within the overall analysis. *See, e.g., Kitagawa v. Drilformance, LLC*, No. H--17-726, 2018 WL 690835, at *3 (S.D. Tex. Feb. 1, 2018). However, other considerations ought to come into play, such as the value of certainty and adherence to court orders.

As Defendants' rightly point out, finding otherwise would potentially allow plaintiffs in an FLSA action to add additional claimants at any time, rendering opt-in deadlines meaningless. Mot. to Strike at 7. Moreover, Defendants rightfully point out that Plaintiffs incorrectly assume the Late Opt-In Plaintiffs would have their claims resolved at the same time as the other Plaintiffs in the action. Reply to Pls.' Resp. at 4. Indeed, the collective action might be dissolved at decertification. All told, if Plaintiffs were to continually attempt to add more late opt-ins on the basis that the discovery deadline has not passed and the Court has not set a trial date, even more of these filings and motions to strike could follow. Plaintiffs cannot justifiably argue that such disregard for the Court-mandated deadline and the likely adversarial processes that would follow will best serve judicial economy. Rather, it would only serve Plaintiffs' attempts to search for more claimants until the last possible moment. The Court will not disregard the value the judicial system places on orderly case management, reasonable reliance on the orders issued by the Court, and certainty. Thus, the Court finds this factor also weighs in Defendants' favor.

   4. **The Remedial Purposes of the FLSA**

While the Court does not look favorably upon the manner in which Plaintiffs' attempted to add the Late Opt-In Plaintiffs, it does agree with other courts that, with respect to the FLSA, a generous reading in favor of those whom Congress intended to benefit from the law is appropriate when considering issues of time limits and deadlines. *Ruggles*, 687 F. Supp. 2d at 38. The Court is skeptical, however, that even the most generous reading of the FLSA (especially considering Plaintiffs' apparent disregard for the legitimacy of the Court's order) would result in necessarily finding that a filing made thirteen months after the deadline must be allowed. But even assuming the generous reading would allow for Plaintiffs to file consents this late, all other factors weigh in favor of the Defendants. Consequently, the Court finds the *Ruggles* scale

unquestionably tilts in favor of Defendants, and the Late Opt-In Plaintiffs cannot join this collective action.

**(C) Plaintiffs' Equitable Tolling Motion is Not Ripe**

Plaintiffs' motion to equitably toll the statute of limitations is premature. Because Mr. Posey and Mr. Richburg's consents have been struck, there is no longer a present controversy before the Court. Thus, the Court cannot evaluate whether the Late Opt-In Plaintiffs are entitled to equitable tolling. *See Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (holding a court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical).

Mr. Posey and Mr. Richburg may file separate actions. Once they have filed these actions, they can then seek equitable tolling in those separate actions at the appropriate time. However, the Court will not consider Plaintiffs' motion here because it is not ripe.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Untimely Consents to Join Collective Action, (ECF No. 204) is **GRANTED**.

**SIGNED** this 5th day of December 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE