# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER FERGUSON,** | § | |
| **individually and on behalf of others** | § | |
| **similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:17-CV-00111** |
| | § | |
| **TEXAS FARM BUREAU BUSINESS** | § | |
| **CORPORATION, TEXAS FARM** | § | |
| **BUREAU CASUALTY INSURANCE** | § | |
| **COMPANY, TEXAS FARM BUREAU** | § | |
| **MUTUAL INSURANCE COMPANY,** | § | |
| **TEXAS FARM BUREAU** | § | |
| **UNDERWRITERS,** | § | |
| **FARM BUREAU COUNTY MUTUAL** | § | |
| **INSURANCE COMPANY OF TEXAS,** | § | |
| **SOUTHERN FARM BUREAU LIFE,** | § | |
| **INSURANCE COMPANY, and** | § | |
| **TEXAS FARM BUREAU,** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE CLAIMS OF PLAINTIFF CHRISTOPHER FERGUSON

---

# <u>TABLE OF CONTENTS</u>

*Page*

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 4

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ........................................................................................................ 7

I.  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON CHRISTOPHER FERGUSON'S CLAIM FOR OVERTIME UNDER THE FLSA .......................................................................................... 7

    A.  Ferguson Is Exempt From Overtime Requirements Under The Highly Compensated Exemption ................................................................... 7

        1.  The Requirements for the Highly Compensated Exemption ..................... 7

        2.  Ferguson's Total Annual Compensation Far Exceeded $100,000 ............. 8

        3.  Ferguson Customarily and Regularly Performed One Or More Exempt Managerial Duties Or Responsibilities .......................................... 8

        4.  Ferguson's Compensation Satisfied The "Salary Basis" Test ................... 8

    B.  Ferguson Is Exempt From The FLSA's Overtime Requirements Pursuant To The FLSA's Administrative Exemption ........................................... 10

        1.  The Requirements for the Administrative Exemption .............................. 11

        2.  Ferguson's Primary Duty Was The Performance Of Office Or Non-manual Work Directly Related To The Management Or General Business Operations Of The Defendants Or Their Customers ................. 12

        3.  Ferguson Exercised Discretion And Independent Judgment With Respect To Matters Of Significance ......................................................... 14

        4.  Ferguson's Compensation Satisfied The Minimum Requirements Of The Salary Basis Test ........................................................................ 16

    C.  Ferguson Is Exempt From Overtime Requirements Under The Executive Exemption ....................................................................................... 17

## TABLE OF CONTENTS
(continued)

*Page*

1.  The Requirements for the Executive Exemption ...................................... 17

2.  Christopher Ferguson's Primary Duty Included Management Of The Farm Bureau Insurance Agency In Matagorda County .................... 17

3.  Ferguson Customarily And Regularly Directed The Work Of Two Or More Employees .................................................................. 19

4.  Ferguson's Recommendations Regarding Recruiting and Hiring Were Given Considerable Weight ........................................... 19

5.  Ferguson's Compensation Satisfied The Salary Basis Test ..................... 20

CONCLUSION .................................................................................... 20

CERTIFICATE OF SERVICE ............................................................... 22

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Defendants Texas Farm Bureau Business Corporation, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, Texas Farm Bureau, and Southern Farm Bureau Life Insurance Company ("SFB Life") (collectively, "Defendants") hereby move for partial summary judgment on all claims asserted in this action by the Plaintiff Christopher Ferguson.

## **INTRODUCTION**

The Plaintiff Christopher Ferguson is a disgruntled former agency manager who was being paid ***in excess of $400,000 per year*** when his contracts with the TFB Insurance Companies[1] and SFB Life were terminated in December of 2016.  After previously acting as agency manager in Hockley, Cochran, and Bailey Counties for several years, Ferguson applied for a contract as agency manager in Matagorda County so he could be "closer to Houston" and make "more money."[2]  Based upon the premium volume of Matagorda County, and the unique way in which agency managers are compensated in the Texas Farm Bureau system, Ferguson knew that, as Matagorda Agency Manager, he would begin with compensation of "at least 300,000 plus."  *Id.* at 61.  Ferguson was accepted for the position as Matagorda Agency Manager and caused his corporation, Christopher Ferguson Insurance Services, Inc. ("Ferguson Inc."), to enter into contracts with the TFB Insurance Companies and SFB Life (together, the "Insurance Companies").

---

[1] The "TFB Insurance Companies" are Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm Bureau County Mutual Insurance Company of Texas.

[2] Deposition of Christopher Ferguson (Feb. 24, 2020) at 54-58, 60 ("Ferguson Dep. Vol. 2"), App. Exh. 2.  All evidentiary materials cited herein are contained in Defendants' Appendix of Exhibits in Support of (1) Defendants' Motion for Partial Summary Judgment on the Claims of Plaintiff Christopher Ferguson, and (2) Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment on the 'White Collar' Exemptions (cited as "App.").

As an agency manager, Ferguson, through Ferguson Inc., was subject to a unique compensation system which guaranteed that he would receive a substantial six-figure income. Agency managers like Ferguson receive compensation, known as an "overwrite" or "override," *regardless of whether they make any sales or actually do any work themselves*.  This overwrite compensation is paid to agency managers automatically when renewal premiums are paid by policyholders on *all existing in-force policies* in the county or counties covered by the agency.  In addition, Ferguson was authorized to select a personal book of policies that would immediately start generating renewal commissions.  Because Ferguson knew that Matagorda County had property and casualty ("P&C") premium volume of over $5.3 million,[3] and because his compensation rates for "overwrite" and renewal commissions were predetermined, Ferguson knew that his total compensation as Matagorda Agency Manager was guaranteed to start at $300,000 "plus."  Ferguson Dep. Vol. 2 at 60-61.  Ferguson's prediction was accurate.  In 2014, 2015, and 2016, Ferguson was paid income by the TFB Insurance Companies alone (not including SFB Life) of $317,701, $368,177, and $371,483, respectively.[4]

Commensurate with his significant compensation, Ferguson was given substantial freedom and authority under his contracts and in practice to manage and build the Matagorda County Agency.  Brown Decl. ¶ 9.  His duties included the recruiting of new agents to the agency, building the sales production of the agency, and running and managing the agency, including supervising the staff.[5]  As manager of the only agency charged with promoting and selling the Insurance Companies' products and servicing their customers in Matagorda County, Ferguson's role was

---

[3] Ferguson Dep. Vol. 2 at Exh. 33.

[4] Declaration of Sloan Brown ¶ 47 ("Brown Decl."), App. Exh. 3.  In addition, SFB Life paid Ferguson $36,847.59, $42,780.19, and $38,699.53, in those same years, respectively.

[5] Brown Decl. ¶ 12; Declaration of David Hurt ¶ 8 ("Hurt Decl."), App. Exh. 4.

critical to the companies' general business operations.

After his contracts with the Insurance Companies were terminated in December of 2016, Ferguson filed this lawsuit. Ferguson claims for the first time in this action that he was an "employee" (and not an independent contractor), and that he should be paid "overtime" in addition to the six-figure income he received. Ferguson, however, has no records of ever actually working over 40 hours in any particular week, and the witnesses from his office directly contradict his claim to have worked overtime. Ferguson's personal Insurance Service Representative ("ISR"), who Ferguson identified as "most familiar with [his] schedule" (Ferguson Dep. Vol. 2 at 106), attested that she could not recall ***any*** weeks when Ferguson worked over 40 hours.[6]

The Defendants dispute Ferguson's claim that he was an "employee" and reject his claim to have worked over 40 hours per week, but this motion does not confront those issues. Even assuming that Ferguson could establish that he was an employee, which he cannot, his claims under the FLSA fail as a matter of law. The FLSA provides an exemption from overtime requirements for individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). As one would expect with a manager earning hundreds of thousands of dollars a year, Ferguson is excluded from overtime under the FLSA. *Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 166 (2012) (pharmaceutical sales representatives averaging $70,000 per year "are hardly the kind of employees that the FLSA was intended to protect"). Ferguson qualifies for the "highly-compensated," "administrative," and "executive" exemptions under the FLSA. Accordingly, his claims should be dismissed as a matter of law.

---

[6] Declaration of Ashley Girlinghouse Rivera ¶ 9 ("Rivera Decl."), App. Exh.8; *see also* Declaration of Kimberly Bryson ¶ 5 ("Bryson Decl."), App. Exh. 7.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For over 50 years, the TFB Insurance Companies and SFB Life have marketed, sold, and serviced their insurance products in Texas through an agency distribution system consisting of agents and agency managers who operate as independent contractors. Brown Decl. ¶ 2. There are currently 141 agency managers in this State. *Id.* Each agency manager, directly or through a corporate entity, enters into Agency Manager Contracts with the Insurance Companies. *Id.* ¶ 8.

Ferguson became an agent in Harris County in 2004. Ferguson Dep. Vol. 2 at 51-52. In 2009, he formed Ferguson Inc. and contracted to become the agency manager of Hockley County. *Id.* at 54-55. In February of 2013, Ferguson applied for a position as agency manager of Matagorda County. Ferguson Dep. Vol. 2, Exh. 35. Ferguson was provided information on Matagorda County, including the fact that it had four agents, $5,350,000 of P&C premium, and in-force life premium of $747,500. *Id.*, Exh. 33. Based on this information, Ferguson was able to calculate that he would have immediate income of over $300,000. Ferguson Dep. Vol. 2 at 60-61. Because he would make "more money" and would be "closer to Houston" (*id.* at 60), Ferguson caused his corporate entity, Ferguson Inc., to enter into Incorporated Agency Manager Contracts with the Insurance Companies to become agency manager of Matagorda County, effective May 1, 2013.[7]

Under his Contracts, Ferguson set his own schedule and had the freedom to recruit and train new agents, to build and grow his agency, to determine business objectives, to determine what types of promotion and marketing his agency would do, to engage in other business if he so chose, and to run and manage the Matagorda agency as he deemed appropriate. Brown Decl. ¶ 9. No one supervised Ferguson on a daily basis. *Id.*

---

[7] *See* Declaration of Robert Manz ¶ 4 & Exhs. H, I, and J ("Manz Decl."), App. Exh. 5.

As agency manager, Ferguson's primary duty was the performance of office or non-manual work as manager of an agency that promotes and sells the Insurance Companies products and services their customers.  *Id.* ¶ 11.  He was responsible for the sales production of the agency, recruiting of new agents to the agency, management of the agency offices, and management and supervision of the staff, including ISRs and secretarial staff.  *Id.* ¶ 12.  For these and his other duties and responsibilities, Ferguson was compensated under a unique system which paid him income based on the total outstanding policies in Matagorda County.  Brown Decl. ¶¶ 15-17.  The components of his compensation included but were not limited to the following:

 (a) commissions on new policies issued by the TFB Insurance Companies ("TFB Policies") sold personally by the agency manager ("New Business Commissions");

 (b) renewal commissions on polices that were previously sold by the agency manager or which have been assigned to the agency manager's personal account ("Renewal Commissions");

 (c) overwrite compensation for new policies sold by agents in the agency ("New Business Overwrites"); and

 (d) overwrite compensation on the renewal of policies that were previously sold by current agents in the agency, as well as all polices in the agency's "pool account," which consists of unassigned accounts sold by former agents ("Renewal Overwrites").

Brown Decl. ¶ 17.[8]  Ferguson was also authorized to select $45,000 of "Assigned Accounts" consisting of existing in-force TFB Policies that would generate Renewal Commissions to Ferguson in the amount of $45,000.  Brown Decl. ¶ 43; Ferguson Dep. Exh. 37.  Ferguson called these Assigned Accounts the "guaranteed base [he] was given."  Ferguson Dep. Vol. 2 at 77.[9]

---

 [8] Policies in the agency's "pool account" are policies which are not assigned to any current agent or the agency manager.  The agency manager automatically receives compensation (Renewal Overwrites) when these pool account policies are renewed.  Brown Decl. ¶ 18.

 [9] Many of the Assigned Accounts had Texas Windstorm Insurance Association ("TWIA") policies attached to them, meaning that Ferguson would receive TWIA renewal compensation *in addition to* the intended $45,000 of Renewal Commissions.  Brown Decl. ¶ 43.

New Business Commissions, Renewal Commissions, New Business Overwrites, and Renewal Overwrites (collectively, "Monthly Compensation") are based on mathematical formulas expressed as a percentage of premium ("Compensation Rates"), which are published to all agency managers. Brown Decl. ¶¶ 24, 27.  Renewal Commissions and Renewal Overwrites (together "Renewal Compensation") provide a guaranteed and predetermined income stream for agency managers, like Ferguson, that is predictable, and not subject to reduction because of variations in the quality or quantity of work performed by the agency manager. *Id.* ¶¶ 34, 38.  Indeed, Ferguson could do no work at all, and still be paid his Renewal Compensation. *Id.* ¶ 26.

As a result of this compensation system, Ferguson was paid in every month from April 2014 through the date his Contracts were terminated **over ten times** the minimum monthly requirement ($1,972) under the regulations necessary to qualify for the highly compensated, administrative, and executive exemptions.  As disclosed in his tax returns, Ferguson also used the payments he received from the Insurance Companies to pay himself a salary from Ferguson Inc. that exceeded $23,660 per year (the equivalent of $455 per week).[10]

## LEGAL STANDARD

Once a party moving for summary judgment satisfies its burden of specifying the basis for its motion and showing the absence of a genuine issue of material fact, the non-moving party must set forth specific facts demonstrating a genuine issue of fact for trial to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Thomas v. Empire Indem. Ins. Co.*,

---

[10] Manz Decl. ¶ 5 (Ferguson Inc. paid Ferguson a salary of $33,575.72 in 2014, $34,685.88 in 2015, and $36,210.74 in 2016).  This salary came from the commissions paid by the Insurance Companies to Ferguson Inc.  Deposition of Christopher Ferguson (Jan. 31, 2020) at 53 ("Ferguson Dep. Vol. 1"), App. Exh. 1.

206 F. App'x. 397, 399 (5th Cir. 2006) (citation omitted).  The non-moving party must do more than show some "metaphysical doubt as to the material facts," and "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S. at 252.  To defeat summary judgment "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## ARGUMENT

I. **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON CHRISTOPHER FERGUSON'S CLAIM FOR OVERTIME UNDER THE FLSA**

    A. **Ferguson Is Exempt From Overtime Requirements Under The Highly Compensated Exemption**

        1. **The Requirements for the Highly Compensated Exemption**

The DOL's implementing regulations for the FLSA provide an exemption from overtime requirements for "highly compensated employees."  29 C.F.R. § 541.601.[11]  This exemption has three requirements.  First, the employee must have "total annual compensation of at least $100,000."  *Id.* § 541.601(a).  Second, the employee must be one who "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."  *Id.*  And third:

> "Total annual compensation" must include at least $455 per week paid on a salary or fee basis.  Total annual compensation *may also include*

---

[11] With respect to exemptions, the 2004 version of the DOL regulations apply to the Plaintiffs in this case and are the version cited in this memorandum.  69 Fed. Reg. 22260 (April 23, 2004).  The regulations were revised as of January 1, 2020 to raise the total compensation required for the highly compensated exemption from $100,000 to $107,432 and the weekly requirement to $684.  84 Fed. Reg. 51307 (Sept. 27, 2019).

*commissions*, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period.

29 C.F.R. § 541.601(a), (b)(1) (emphasis added).  Ferguson satisfies all three requirements.

### 2.    Ferguson's Total Annual Compensation Far Exceeded $100,000

It is undisputed that Ferguson's total compensation from the TFB Insurance Companies and SFB Life was over $400,000 in 2015 and 2016, and over $350,000 in 2014.  *See supra* note 5 and accompanying text.  Thus, Ferguson satisfies the $100,000 total compensation requirement.

### 3.    Ferguson Customarily and Regularly Performed One Or More Exempt Managerial Duties Or Responsibilities

The regulations provide that "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties."  29 C.F.R. § 541.601(c).  Moreover, the employee need only perform <u>one</u> of the exempt duties.  As discussed below, Ferguson fully satisfies the duties test for the "administrative" exemption, and there is no question that he performs multiple exempt duties.  *See infra* pp.12-16; *see, e.g.*, 29 C.F.R. § 541.203(b) (employees in the financial services industry satisfy the "duties requirements for the administrative exemption" if they engage in "determining which financial products best meet the customer's needs and financial circumstances"); Brown Decl. ¶ 13.

### 4.    Ferguson's Compensation Satisfied The "Salary Basis" Test

The highly compensated exemption requires only that "at least $455 per week" of the employee's total compensation (a total of **$23,660** per year) be paid on a "salary basis."  29 C.F.R. § 541.601(b)(1).  For persons, paid on a monthly basis, this translates to $1,972 per month.  *Id.* § 541.600(b).  Notably, the "regulations do not require that the wages be *called* a 'salary' to qualify as being paid on a 'salary basis.'"  *Akins v. Worley Catastrophe Response, LLC*, 2013 WL 1907486, at *4 (E.D. La. May 8, 2013).  "Salary basis" is a term of art; the regulations state that an employee "***will be considered to be paid*** on a 'salary basis' within the meaning of [these regulations]" if the

requirements are met.  29 C.F.R. 541.602(a) (emphasis added).  Those requirements are that "the employee [1] "regularly receives each pay period … a predetermined amount constituting all or part of the employee's compensation, [2] which amount is not subject reduction because of variations in the quality or quantity of the work performed."  *Id.*

In the case of Ferguson, 80% of his regular Monthly Compensation consisted of Renewal Commissions and Renewal Overwrites.  Declaration of Chuck Pearl ¶ 7, App. Exh. 6.  The amount of this Renewal Compensation is predetermined by the number of outstanding policies coming up for renewal during the relevant pay period, the amount of premium due on those policies, the Compensation Rates applicable to those renewals and overwrites, and premium retention rates. Brown Decl. ¶ 25; Pearl Decl. ¶ 12.  A "retention rate" represents the percentage of policies, or percentage of premiums, that renew upon policy expiration.  Pearl Decl. ¶ 12.  While "the renewal of a single policy is difficult to predict, … as the number of policies grows, the retention or persistency rate for the group becomes much more predictable and stable.  *Id.*; Brown Decl. ¶ 36. As a result, "[t]he premium retention rate can be used to predict future renewal commission income with reasonable certainty."  Pearl Decl. ¶ 12.

From year-end 2013 through 2016, Matagorda County had a premium retention rate of 92%.  Pearl Decl. ¶ 21.  Based on this rate, "it [was] effectively guaranteed that Ferguson's commission income from renewals alone would not fall below the FLSA minimum of $1,972." *Id.* ¶ 22.  And, in fact, from April 1, 2014 to December 31, 2016, Ferguson's average monthly compensation from the Insurance Companies was **$31,050**, and Ferguson's monthly income was ***never less than ten times*** the "salary basis" minimum of $1,972 per month for exempt employees. *Id.* ¶ 16.  There is no question that part of Ferguson's total compensation was predetermined and guaranteed to exceed $1,972 per month,.  In addition, Ferguson received Assigned Accounts in the

amount of $45,000, which he described as his "guaranteed base." Ferguson Dep. Vol. 2 at 77. These Assigned Accounts alone, which had additional TWIA commissions attached, and certainly in combination with Ferguson's Renewal Overwrites, guaranteed that he would receive significantly more than $45,000, and well over $1,972 per month. Brown Decl. ¶ 43.

The Renewal Commissions, New Business Overwrites, and Renewal Overwrites were paid to Ferguson irrespective of and without reduction for any variations in the quantity or quality of his work, if any. These amounts were paid even if Ferguson did no work whatsoever. Brown Decl. ¶ 26. In sum, Ferguson regularly received on a monthly basis a predetermined amount based on Renewal Commissions and Renewal Overwrites, which as a matter of actuarial certainty was guaranteed to exceed $1,972 per month, and which did in fact exceed $1,972 per month *every month by a factor of ten*. Pearl Decl. ¶ ¶ 16, 22.[12] As an agency manager who expected to earn, and did earn, $350,000 to $400,000 a year, Ferguson was covered by the highly compensated exemption, and summary judgment should be granted to Defendants on his claims for overtime.

**B.    Ferguson Is Exempt From The FLSA's Overtime Requirements Pursuant To The FLSA's Administrative Exemption**

Summary judgment should also be granted to the Defendants with respect to the claims of Ferguson because the undisputed record evidence shows that Ferguson is exempt from the FLSA's overtime requirements based on the administrative exemption. 29 C.F.R. § 541.200(a). Courts and the DOL have both long held that the administrative exemption applies to insurance agents involved in activities identical to Ferguson's duties and responsibilities.[13]

---

[12] In addition, Ferguson used the monies he received from the Insurance Companies to pay himself a salary which exceeded $455 per week ($23,660 per year). *See supra* note 10.

[13] *See, e.g.*, DOL Opinion Letter FLSA 2009-28, dated Jan. 16, 2009 ("DOL Ltr. 2009-28"), App. Exh. 21; *Hogan v. Allstate Ins. Co.*, 361 F.3d 621 (11th Cir. 2004); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997); *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360 (M.D.

### 1.      The Requirements for the Administrative Exemption

The FLSA excludes employees working in bona fide administrative capacities from its overtime requirements.  *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006) (citing 29 U.S.C. § 213(a)(1)).  The exemption was "premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges" that "set[ ] them apart from the nonexempt workers entitled to overtime pay."  *Defining and Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 21,122, 22,124, 22,146 (Apr. 23, 2004).  "Further, the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult[.]"  *Id.*

In order to qualify for the administrative exemption, an employee must be paid compensation that meets the minimum requirements of the "salary basis" test.  29 C.F.R. § 541.200(a).  Second, the employee's primary job duties must "involve the performance of office or non-manual work directly related to the management or general business operations of the employer or its customers."  *Jones v. New Orleans Reg'l Physician Hosp. Org.*, 2020 WL 7074225, at *1 (5th Cir. Dec. 3, 2020) (citing 29 C.F.R. § 541.200(a)).  And third, "the employee's primary job duties must include exercising discretion and independent judgment with respect to matters of significance."  *Id.*

"[M]any financial services employees qualify as exempt administrative employees, even if they are involved in some selling to consumers."[14]  Indeed, duties common among insurance

---

Ga. 2002); *cf. Coppage v. Bradshaw*, 665 F. Supp. 2d 1361 (N.D. Ga. 2009) (state managing director of an insurance agency, with duties similar to Ferguson's, was administratively exempt).

[14] DOL Ltr. 2009-28 at 6 (quoting 69 Fed. Reg. 21,122, 22,146).

agents—such as engaging in marketing, promotion, and business development efforts; making themselves visible to the public; servicing existing customers; promoting the company's financial products; advising customers on the appropriate product to fit their needs; and directing the daily affairs of their offices—fit squarely within the confines of the administrative exemption. *See* DOL Ltr. 2009-28 at 4-5; *Wilshin*, 212 F. Supp. 2d at 1376-79.

### 2. Ferguson's Primary Duty Was The Performance Of Office Or Non-manual Work Directly Related To The Management Or General Business Operations Of The Defendants Or Their Customers

The Insurance Companies market, sell, and service property and casualty and life insurance products through an agency distribution system. Brown Decl. ¶¶ 1-2; Hurt Decl. ¶¶ 3, 5. "An Agency Manager will typically manage an agency that focuses its sales and marketing activity in one to three Texas Counties[.]" Hurt Decl. ¶ 8. During the relevant time period, Ferguson was the only agency manager in Matagorda County. Ferguson's management and promotion of his agency was thus essential to the success of Defendants' business in that county, in terms of sales, servicing customers, and promoting the Farm Bureau brand. Hurt Decl. ¶ 8; Brown Decl. ¶ 11.

Ferguson's own description of his responsibilities and experience as an agency manager establish that his primary duty[15] was the performance of office work "directly related to assisting with the running" of the Defendants' business operations and the servicing of their customers. *Jones*, 2020 WL 7074225, at *3. Ferguson testified that his duties and responsibilities as agency manager were "[p]rimarily to manage the agency," which included "recruiting new candidates for agents, managing the secretaries, making sure the agency and the agents were meeting their

---

[15] "Primary duty" refers to "the principal, main, major or most important duty that the employee performs." *Jones*, 2020 WL 7074225, at *3 (quoting 29 C.F.R. § 541.700(a)). "This does not mean, however, that exempt employees must spend more than fifty percent of their time performing exempt work." *Id.* (citing 29 C.F.R. § 541.700(b)).

[production] numbers that had been set, servicing current accounts, doing [policy] changes and [ ] so forth."  Ferguson Dep. Vol. 2 at 79-80, 86.  Ferguson stated that the "majority" of his day consisted of "managing, not selling."  *Id.* at 107.  In both a resume and a public LinkedIn profile, Ferguson described his role further:

> Recruited, trained, and supervised highly-productive sales teams of up to 12 members; motivated and mentored staff to exceed established sales goals. Developed annual organizational budget; designed and implemented comprehensive marketing plans.  Managed sales contracts.  Forged effective and service-oriented client relationships to foster understanding of insurance needs.

*Id.* at 125-27 & Dep. Exhs. 40, 41.  Ferguson's description of his duties is consistent with undisputed facts from the Defendants' testimony on Ferguson's role as agency manager.  *See* Brown Decl. ¶¶ 8-13; Hurt Decl. ¶¶ 8-9.

Ferguson was also engaged solely in non-manual office work.  *See* Hurt Decl. ¶ 8; Brown Decl. ¶ 11; *Wilshin*, 212 F. Supp. 2d at 1376 (no dispute insurance agent's duties constituted "office or nonmanual work").  It is likewise not subject to dispute that the primary duties of Ferguson were directly related, and indeed essential, to the Defendants' business operations and the servicing of their customers.  29 C.F.R. § 541.201(b) sets forth several, non-exhaustive examples of areas of work that are "directly related to management or general business operations," including accounting, budgeting, insurance, quality control, advertising, marketing, and personnel management.[16]  Ferguson's duties fall clearly within section 541.201(b).

The DOL has confirmed that the work of insurance agents who, like Ferguson, "service the insurance company's business," "advise clients on various insurance and financial products," and

---

[16] Notably, the regulation cites "employees acting as advisors or consultants to their employer's clients or customers," such as financial consultants, as an example of administratively exempt employees.  *Id.* § 541.201(c).

"engag[e] in promotion and business development activities" is "directly related to the management or general business operations of the" company.  DOL Ltr. 2009-28 at 4-6.  Courts, too, have found that the types of duties undertaken by Ferguson satisfy this prong of the administrative exemption.  In *Wilshin*, for instance, the court determined that the work of an insurance agent, whose "duties included (1) representing the company and handling PR; (2) selling [the company's] products; (3) providing assistance to customers with claims issues; (4) marketing [the company's] products; and (5) directing the day-to-day affairs of his office," was directly related to the company's management policies or its general business operations or customers. 212 F. Supp. 2d at 1376-77.[17]   There is no question that Ferguson satisfies this prong of the administrative exemption.

### 3. Ferguson Exercised Discretion And Independent Judgment With Respect To Matters Of Significance

Ferguson also satisfies the administrative exemption's requirement that  his "primary job duties included the exercise of discretion and independent judgment with respect to matters of significance."   *Jones*, 2020 WL 7074225, at *4 (quoting 29 C.F.R. § 541.202(a); (internal quotations omitted).  "There is no requirement that all or even most of Plaintiff's work involve discretion and independent judgment; the employee's work need only include use of discretion or independent judgment."  *Wilshin*, 212 F. Supp. 2d at 1378.  Moreover, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R. § 541.202(c).  "Thus, an employee need not exercise final decision-

---

[17] *See also Hogan*, 361 F.3d at 627-28 (similar); *Reich*, 126 F.3d at 10 (insurance marketing representatives who promoted sales and represented the company were primarily engaged in administrative work); *cf. Jones*, 2020 WL 7074225, at *3-4 (the work of managed care company employees, whose duties included advertising, marketing, and maintaining, recruiting, and enlarging the company's provider network, was directly related to its general business operations).

making authority to fulfill the regulation's standard." *Jones*, 2020 WL 7074225, at *4 (citing *Lott*

*v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000)).

The record reflects that Ferguson's primary duties as agency manager required him to

exercise discretion and independent judgment in multiple significant areas:

- **Managing the office** (*see Hogan*, 361 F.3d at 628):  As manager of the Matagorda County agency, Ferguson developed "annual organizational budgets" and entered into memoranda of understanding with the County Board relating to the sharing and reimbursement of office expenses, such as rent and staff salaries.  Ferguson Dep. Vol. 1 at 41-43, 51-52; Ferguson Dep. Vol 2. at 125-27 & Exhs. 40, 41.  He researched and made recommendations to the County Farm Bureau regarding office maintenance projects and telephone service options.  Ferguson Dep. Vol. 1 at 182-83 & Exh. 20.  Ferguson also enforced an "agent of the day" rotation to ensure the office was staffed to handle customer needs.  Ferguson Dep. Vol. 2 at 21 & Exh. 25.

- **Building relationships with customers, evaluating needs, and developing individualized advice and strategies** (*see Hogan*, 361 F.3d at 627; DOL Ltr. 2009-28; *Wilshin*, 212 F. Supp. 2d at 1379):  Ferguson had significant discretion in how he approached and built relationships with customers and how he analyzed and advised customers on their insurance needs and risks.  *See* Brown Decl. ¶ 13; Ferguson Dep. Vol. 2 at 125-27 & Exh. 41 (stating that he "[f]orged effective and service-oriented client relationships to foster understanding of insurance needs" in his role as an Agency Manager).

- **Promoting sales** (*see Hogan*, 361 F.3d at 627):  Agency managers are responsible for the sales production of their agencies and have substantial authority and freedom to build and grow their agencies.  Brown Decl. ¶ 9, 12. Ferguson decided what to pay for advertising and promotion for the agency through Ferguson Inc.  *See* Ferguson Dep. Vol. 1 at 33.

- **Representing the companies in resolving customer grievances** (*cf.* 29 C.F.R. § 541.202(b)):  Ferguson testified that his duties included "[r]unning the office" and "dealing with client complaints."  Ferguson Dep. Vol. 2 at 103 ("[W]e had a lot of people that had their auto insurance or homeowner's insurance rates go up and they call up mad about that and you have to research to find why they got a rate increase.").

- **Deciding on an advertising budget and techniques** (*see Hogan*, 361 F.3d at 627):  Ferguson represented that he "designed and implemented comprehensive marketing plans" while he was an agency manager, and that he made the decision to pay for advertising and promotional activities for his agency.  Ferguson Dep. Vol. 1 at 33; *id.* Ferguson Dep. Vol. 2 at 125-27 & Exhs. 40, 41.  Brown Decl. ¶ 9 (agency managers have substantial authority and freedom to determine the types of promotional and marketing activities in which they engage).

- ***Hiring, training, and delegating to staff*** (*see Hogan* at 627; *Wilshin*, 212 F. Supp. 2d at 1379; *Lott*, 203 F.3d at 332): Ferguson's management of his agency included "managing the secretaries." Ferguson Dep. Vol. 2 at 79-80; *see also* Brown Decl. ¶ 12 ("The Agency Manager regularly directs the work of any ISRs who work for the Agency Manager in whole or in part, and the Agency Manager directs the work of any secretaries working in the Agency."). Ferguson used his discretion and judgment to hire ISRs and secretaries, and he paid all or part of their salaries out of his own pocket. Ferguson Dep. Vol. 2 at 81, 82, 84; Rivera Decl. ¶ 14. Ferguson directed their work, oversaw their hours, and approved their time off. *See* Ferguson Dep. Vol. 1 at 157 & Exhs. 19, 26, 27; Ferguson Dep. Vol. 2 at 22; Rivera Decl. ¶ 3; Bryson Decl. ¶ 3.

- ***Recruiting, interviewing, and recommending agents*** (*cf. Jones*, 2020 WL 7074225, at *4): Part of an agency manager's responsibilities is to recruit new agents to the agency. Brown Decl. ¶ 9; Hurt Decl. ¶ 8. Ferguson's testimony confirms that his duties included finding and "recruiting new candidates for agents" and that Defendants ultimately contracted with agents he recruited and recommended. Ferguson Dep. Vol. 2 at 79-81, 108:3-5.

There is no question that, as an agency manager, Ferguson exercised discretion and independent judgment on multiple matters and in multiple areas of significance within the meaning of the regulations. *See* DOL Ltr. 2009-28 at 7; *Hogan*, 361 F.3d at 627-28; *Wilshin*, 212 F. Supp. 2d at 1379; *Jones*, 2020 WL 7074225, at *4; *Lott*, 203 F.3d at 332. This prong of the administrative exemption is satisfied.

### 4. Ferguson's Compensation Satisfied The Minimum Requirements Of The Salary Basis Test

As demonstrated above, the agency manager compensation system applicable to Ferguson guaranteed that Ferguson would regularly be paid at levels that far exceeded $1,972 per month, and in fact it is undisputed that Ferguson's compensation under his Contracts was in fact ***over 10 times*** the amount necessary to satisfy the salary basis test, and moreover, he was paid a conventional "salary" in excess of $23,660 annually by his own corporation. *See supra* pp. 8-10. Consequently, all of the requirements for the administrative exemption are satisfied, and the Court should grant summary judgment in favor of Defendants on Ferguson's claims as a matter of law.

### C.   Ferguson Is Exempt From Overtime Requirements Under The Executive Exemption

Ferguson's claims are also subject to summary judgment under the executive exemption.

#### 1.   The Requirements for the Executive Exemption

The FLSA exempts from its overtime requirements any person employed in a *bona fide* executive capacity.  The executive exemption applies to any employee who is: "(1) Compensated on a salary basis at a rate of not less than $ 455 per week;" "(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a); *Chambers v. Sodexo, Inc.*, 510 F. App'x 336, 339 (5th Cir. 2013); *Carranza v. Red River Oilfield Servs., LLC*, 2017 WL 387196, at *2 (S.D. Tex. Jan. 27, 2017).  Ferguson meets all of these requirements.

#### 2.   Christopher Ferguson's Primary Duty Included Management Of The Farm Bureau Insurance Agency In Matagorda County

To satisfy the executive exemption, an employee's primary duty must be management of the enterprise or a recognized department or subdivision.[18]  Examples of management include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other

---

[18] A "customarily recognized department or subdivision," is one with a "permanent status and function," rather than a "collection of employees assigned from time to time to a specific job or series of jobs." 29 C.F.R. § 541.103(a).  If an enterprise has more than one office or branch, "the employee in charge of each establishment may be considered in charge of a recognized subdivision of the enterprise."  *Id.* § 541.103(b).  There are approximately 142 Farm Bureau insurance agencies in Texas.  Brown Decl. ¶ 2.  Ferguson was contracted to manage the Matagorda County agency and was the only Agency Manager in Matagorda County from 2013 to 2016.

changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The uncontroverted evidence shows that Ferguson performed many of these managerial activities.

Ferguson's duties as Matagorda Agency Manager included "to manage the agency." Ferguson Dep. Vol. 2 at 79. There were approximately four agents in the agency, not including Ferguson. *Id*. at 69. His managerial duties included recruiting new agents, assigning pool accounts to new agents (*id*. at 95), and providing training and assistance to the agents in his agency in understanding and tracking their production numbers. *Id*. at 69, 71; Brown Decl. ¶ 12. Ferguson was also responsible for the production of his agency, making sure the agents were meeting their production goals. Ferguson Dep. Vol. 2 at 108. He held monthly meetings with the agents in Matagorda County to discuss production numbers and sales goals. *Id*. at 45.

Ferguson also hired an ISR for his agency, *id.* Vol. 1 at 148, managed all the ISRs and secretaries in the office, *id*. Vol. 2 at 79, approved their schedules and requests to take time off, *id*. Vol. 1 at 156-57; *id*. Vol. 2 at 22, and approved their overtime requests. *Id*. at 173-74, 175-76. He attended monthly Matagorda County Farm Bureau board meetings and participated in preparation of the annual budget, and entered into memoranda of understanding with the Matagorda County Farm Bureau relating to the reimbursement of rent and staff salaries. Ferguson Dep. Vol 2 at 99; *id*. Vol. 1 at 42:2-43:17. Ferguson also decided what amounts would be spent for advertising and the promotion of the agency. *Id*. Vol. 1 at 33.

Ferguson's concession that the "majority of [his] day was [spent] managing" the agency, *id*. Vol. 2 at 107, leaves no doubt that this prong of the executive exemption is satisfied.

### 3. Ferguson Customarily And Regularly Directed The Work Of Two Or More Employees

The fact that Ferguson regularly supervised at least two employees (secretaries and ISRs) within his agency is not subject to dispute. Indeed, Ferguson acknowledged at deposition that his duties as agency manager included "managing the secretaries." Ferguson Dep. Vol. 2 at 79; *see also* Rivera Decl. ¶ 3 ("As Agency Manager, Ferguson was responsible for managing the office and directing my work and the work of other ISR[s] and secretarial employees in the office"); Bryson Decl. ¶ 3 ("I report to the Agency Manager."); Ferguson Dep. Vol. 1 at 173-74 & Exh. 19 (evidencing Ferguson's supervision of multiple staff employees). Ferguson delegated tasks to the secretaries and ISRs and oversaw their work.[19] He also managed their hours and schedules.[20] Ferguson, thus, satisfies the executive exemption's requirement that he "customarily and regularly directs the work of two or more other employees." *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 781 (S.D. Tex. 2014) (citing 29 C.F.R. § 541.100(a)).

### 4. Ferguson's Recommendations Regarding Recruiting and Hiring Were Given Considerable Weight

One of Ferguson's duties as agency manager was to recruit and recommend new agents for contracting to join the agency. Brown Decl. ¶ 12. Ferguson was in charge of managing the office,

---

[19] *See* Rivera Decl. ¶¶ 4-7 ("I did almost all of Ferguson's service work. … [W]hen he was out of the office, he would forward e-mails to me to handle."); Ferguson Dep. Vol. 1 at Exh. 16, p.1 ("I'm out today. Make sure you copy Ashley on my emails."); *id.* at p.3 ("When anyone calls for me, please send them to Ashley."); *id.* at Exh. 17, p.7. (directing ISR to "look in notes and see if you can figure out what caused" a policy to non-renew).

[20] Ferguson Dep. Vol. 1 at 156-57, 159-60, 173-74, & Exh. 19 ("Please remember that you are responsible for keeping track of your hours. Overtime needs to be okayed by me….."); Ferguson Dep. Vol. 2 at 22-26 & Exhs. 26 & 27 (reflecting Ferguson's management of secretaries' and ISRs' schedules and consideration of time-off requests).

and although he did not have final authority to hire, his recommendations for contracting with an agent, or hiring an ISR or secretarial employee for the agency, were "given great weight" and "followed the vast majority of the time." *Id.* ¶ 10. This is all that is required to satisfy the executive exemption. 29 C.F.R. 541.100(a)(4) (exemption requires only that "suggestions and recommendations as to hiring" be "given particular weight"). "If final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations." *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 867 (N.D. Tex. 2001). Ferguson readily satisfies this prong of the executive exemption.

### 5.   Ferguson's Compensation Satisfied The Salary Basis Test

Finally, as already discussed, Ferguson's compensation satisfies the salary basis test. *See supra* pp. 8-10. Thus, all of the requirements of the executive exemption are met, and the Court should grant summary judgment to the Defendants on Ferguson's claims as a matter of law.

### <u>CONCLUSION</u>

For the reasons set forth above, Ferguson falls within the highly compensated, administrative, and executive exemptions established under the FLSA, and summary judgment should be granted in favor of the Defendants on his claims for overtime in this action.

Dated:  December 14, 2020

By: _/s/ Barry A. Moscowitz_

BARRY A. MOSCOWITZ
Texas State Bar No. 24004830
bmoscowitz@thompsoncoe.com
LESLIE W. RICHARDSON
Texas State Bar No. 24079830
lrichardson@thompsoncoe.com
FARSHEED FOZOUNI
Texas State Bar No. 24097705
ffozouni@thompsoncoe.com
THOMPSON, COE, COUSINS &
   IRONS, L.L.P.
700 North Pearl Street, Suite 2500
Dallas, Texas  75201-2832
Telephone:  (214) 871-8200
Telecopy:  (214) 871-8209

*Attorneys for Defendants Texas Farm Bureau*
*Business Corporation, Texas Farm Bureau*
*Casualty Insurance Company, Texas Farm*
*Bureau Mutual Insurance Company, Texas*
*Farm Bureau Underwriters, Farm Bureau*
*County Mutual Insurance Company and*
*Texas Farm Bureau*

Respectfully submitted,

By: _/s/ Markham R. Leventhal_

MARKHAM R. LEVENTHAL
mleventhal@carltonfields.com
SCOTT ABELES
sabeles@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

CATHLEEN BELL BREMMER
cbell@carltonfields.com
CARLTON FIELDS, P.A.
Suite 1000
4221 West Boy Scout Boulevard
Tampa, Florida 33607-5780
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

IRMA REBOSO SOLARES
isolares@carltonfields.com
STEPHANIE A. FICHERA
sfichera@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Southern Farm Bureau*
*Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide service on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF:

John Eddie Williams, Jr.
jwilliams@williamskherkher.com
Brian A. Abramson
babramson@williamskherkher.com
Sean M. McCarthy
smccarthy@williamskherkher.com
Williams Kherkher Hart Boundas, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: (713) 230-2200
Facsimile: (713) 643-6226

Kelly E. Cook
kcook@wylycooklaw.com
Warren A. Berlanga
wberlanga@wylycooklaw.com
Wyly & Cook, PLLC
4101 Washington Ave., 2nd Floor
Houston, Texas 77007
Telephone: (713) 236-8330
Facsimile: (713) 863-8502

Avi Moshenberg
avi.moshenberg@mhllp.com
Nick Lawson
nick.lawson@mhllp.com
William B. Thomas
william.thomas@mhllp.com
McDowell Hetherington, LLP
1001 Fannin, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

*Attorneys for Plaintiffs*

Barry Moscowitz
bmoscowitz@thompsoncoe.com
Leslie W. Richardson
lrichardson@thompsoncoe.com
Farsheed Fozouni
ffozouni@thompsoncoe.com
Thompson Coe Cousins & Irons, L.L.P.
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:  (214) 871-8200
Facsimile:  (214) 871-8209

*Attorneys for Defendants Texas Farm
Bureau Business Corporation, Texas
Farm Bureau Casualty Insurance
Company, Texas Farm Bureau Mutual
Insurance Company, Texas Farm Bureau
Underwriters, Farm Bureau County
Mutual Insurance Company of Texas,
and Texas Farm Bureau*

124145498

_____ */s/ Markham R. Leventhal* _____

-22-